The next case called for oral argument is People v. Boose. I'm Patty Anderson, counsel for Jarvis v. Boose. In this appeal, we ask that the court reverse Mr. Boose's conviction for first-degree murder on the basis that the evidence of guilt was insufficient, or alternatively, that the use of the videotaped interrogation at trial violated his rights in that it showed him invoking his Fifth Amendment right to silence and right to counsel, something that's improper under constitutional law. Nothing very good ever happens in East St. Louis after 2 a.m. in the morning. And this is another example of just how bad things can go. There were a number of people out on the street that night. DeMario Williams, Deontay Rice, Carlos Boose, Vincent Beeman, Jarvis Boose, Daryl Britton, who was shot and died, and also Johnny May Wright, an admitted crack addict. Detective Rick Perry of the East St. Louis Police was the homicide investigator on this case. Detective Perry probably could have put this case on any of the men I mentioned, DeMario Williams and Deontay Rice particularly. Jarvis Boose was the person who ended up facing the charges here. It's our contention that the witnesses against Jarvis simply are incredible, particularly because we know that DeMario Williams and Deontay Rice both were accused of committing this crime. They both admit that they were high at the time that the crime occurred and had been out drinking and smoking that night. The other witness that gives some corroboration to their description of how the shooting occurred was Johnny May Wright. And Ms. Wright was an admitted long-term crack cocaine addict whose estimate of the time the crime occurred was based on her belief that it had to be after 4 a.m. because the crack house was closed for the night. They have regular hours or what? Do you know if it's close to 4? She knew pretty well that she'd been there and was out of luck for the night. Now the jury heard from these witnesses and they also heard that Detective Perry acknowledged that he accused, I believe it was Rice, of the murder and that he would if he'd be liable a witness to try and get them to give up information. I think a thorough review of these witnesses shows that they simply weren't credible on what happened. Those two men are interested. They both admit that they were trying to avoid getting charged for this crime. They did what they could to avoid being charged. Carlos Boos didn't show for trial. We don't know what his version of events would have been. Vincent Beeman didn't show for trial. He provided an affidavit after the fact that it was exculpatory for Charles Boos. The key point in the evidence, I think, that turned the case for the state was the use of the videotaped interrogation. Without that, those witnesses simply wouldn't have been enough to carry the case. As it is, the jury hesitated before reaching a decision. They indicated at one point that they were hung up and they sent out a request to see the video, and they watched the video of the interrogations during the deliberations. It was error for them to see that video. I think it's very clear-cut that that, by itself, is reversible error. Defenders' rights to silence and right to counsel include the ability to invoke those rights without having that invocation used against them. In this instance, lo and behold, during trial, the jury gets to not only see the defendant being questioned about the crime, see him inform of his rights, they see him invoking his right to cease the interrogation at one point, and then later, under some pretty direct questioning, simply say, I want an attorney. That's error both under Illinois law and as a matter of federal constitutional law. The state doesn't get to use that information at trial. In the brief, we discuss the significance of the invocation of rights. Case law shows that a defendant's invoking of rights is powerful to a jury. It suggests that he's got culpability. Despite the fact that it's clear-cut, that evidence isn't admissible and really doesn't go to the issue of someone's culpability for a crime. Now, it's true that the defense attorney didn't raise this issue, didn't challenge the use of video at trial on the basis that showing the defendant being admonished for using his rights was a violation. He did try to suppress the evidence on the basis that it was improper under the statute on video interrogations. So the state argues that this error is waived. It's our contention that this is clearly plain error. It's a serious violation of rights in a case where the evidence is actually close. Again, as I said, the jury hesitated on its verdict. The state's witnesses were seriously lacking in credibility given their interest, given their impairment due to drug abuse. Alternatively, we would contend that the court should have been aware that the content of that video was going to show the defendant invoking his rights and could have, on its own side, said, jury, you can't give this any regard, so respond to the instruction. And alternatively, further, that counsel should have realized that this was improper evidence and moved to have it barred from the record. And his failure to do so is ineffective, particularly given how prejudicial the evidence was. If the court doesn't have any questions, I'll simply urge that the court find that the evidence was insufficient and reverse the conviction, or alternatively, find that the use of the evidence of the videotape was improper and reverse the conviction and remand him to trial. Thank you, counsel. Counsel? May it please the court, counsel. The first issue, defendant raises the sufficiency of the evidence, and we're all aware of the standard that applies. Once a defendant has been found guilty, the trier affects decisions as to credibility in the way that the evidence is preserved. And the question that's relevant before this court is whether any reasonable trier fact could have found the essential elements of the offense charged beyond a reasonable doubt on these facts. And defendant argues that the witnesses should not have been believed, that they lacked credibility for a number of different reasons. I just want to point out to the court, as was done in the People's Brief, where the defense counsel first argued to the jury in his opening statements that the witnesses were not credible witnesses, that they were not people that could be believed or trusted. So the jury was put on notice right away that the defendant believed that that was the case. Therefore, they were, you know, they were given a heads up. They should have been looking closely at those witnesses and determining whether they should have been believed or not. The defendant argues in his brief that the two witnesses, Rice and Williams, shouldn't be believed because they didn't go to the police right away and were, in fact, charged as accomplices. There's nothing in this record to show that these two were ever charged as accomplices. And, in fact, Detective Perry testified unequivocally that they were, in fact, never considered suspects in this case. Both of these witnesses testified as to why they didn't go to the police. The jury had all of that in order to make their decision whether they would believe those witnesses or not as to why they didn't go to the police. Now, as to, I think, an important point is whether the witnesses should be believed because they were either impaired at the time of the offense or that they were chronic drug addicts or alcoholics or whatever. Now, in our brief, people cited People v. Steidle for the proposition that although the testimony of an addict should be viewed with caution, it may be enough to prove a case beyond a reasonable doubt. Defendant points out in his reply brief that the Steidle conviction has been vacated on habeas review. But I think that it's important for this court to take a look, actually, at that federal habeas decision because it wasn't based on the rejection of this particular proposition that the people cited in their brief. The review of the federal court's decision shows that the vacature was in fact due to the fact that the circumstances in that case tended to refute the witnesses' credibility and that the defense counsel was ineffective for failing to investigate and actually bring out those contradictory pieces of evidence stronger for the jury. That doesn't exist in the present case. There's nothing here to show that the observations or the testimony of these three witnesses were contradicted by any other evidence. So there's nothing to show that the jury's finding as to the credibility was unreasonable under the circumstances. As to the credibility of Detective Perry, he admitted during trial that he in fact lied to the defendant about having a videotape of him at the gas station, which was very close to the scene of the shooting. And Detective Perry stated, I believe that this is a common thing that is done in police departments and apparently the jury believed, as other courts in the state and in fact the country, have determined that it is necessary at times to use deception in order to counteract the deception that is used by the suspects to get them to open up. So the jury was instructed as to the credibility also of these witnesses, that it should be with caution, addicted witnesses, to consider whether there was any bias or prejudice or any interest that a witness might have had to sway his testimony to make him present unbelievable testimony. And the jury decided apparently that they did believe those witnesses. Finally, the defendant argues at the end of this issue that the evidence was not strong and that the jury's request to view the videotape of the interviews shows that it was not strong. However, I think that it's important for the court to remember the timing and to pay attention to the timing of the jury's request for the interview tapes. The jury retired to deliberate at 11 o'clock in the morning and they were given their lunch during, shortly after they retired, it says on the record, excuse me, at 12.15 or 12.10 is when they requested the tape, the videotape of the interviews. It wasn't until two hours later after viewing the tape that they came back with the note that said that they were unable to decide. Then, two hours later, they were able to come back with a verdict of guilty. So, the request by the jury to see the videotape doesn't indicate that the other evidence was lacking or not strong at all. In fact, the testimony of the two witnesses, Williams and Rice, alone, believed by the jury, was enough to support the conviction in this case. Also, as a side note on that issue, the jury was doing exactly what defense counsel asked them to do when they requested the videotape. In his closing remarks, counsel asked them to carefully review that videotape. That's what they did and this shows that they just were carefully viewing all the evidence, weighing all the evidence, and trying to reach a decision that was as reasonable as possible and they found that the defendant was proved guilty beyond a reasonable doubt. Now, as to the second showing of the video, as counsel mentioned, this was not objected to on the grounds brought in this appeal and we argue forfeiture issue. That's clear in our brief. Defendant argues that this then should be viewed as plain error. Now, there are two prongs to the plain error analysis. It's either where the evidence is so closely balanced that the error alone ticked the scales against the defendant, and as I've just argued, the evidence was not closely balanced in this case. There was no evidence presented to contradict the state's evidence presented. The second prong is where the error is so serious that it affects the fairness of the trial. We cited two cases which state specifically that comment on that evidence that a defendant's post-arrest silence or post-warning silence, while improper, isn't such a great error as to clearly deprive him of a fair trial. And the rule in Doyle is that the defendant should not be penalized for invoking his rights in response to warnings inducing him to invoke those rights. There's no evidence here that he was penalized for that. Although the video was introduced in the state's case in chief, the prosecutor made no specific reference to those portions where the defendant exercised his rights. None of the detectives commented on the defendant's exercise of his rights. So we would just ask that the court affirm the defendant's convictions. Thank you, Counsel. Thank you. Counsel? In regard to the second argument, of course, the state does acknowledge that the jury should have seen those videos, that that was proper. They mostly rely on the forfeiture matter to get them through. I'd like to respond. Counsel, I hope I didn't mislead her in my brief or she misread my brief, indicated that I said that Rice and Williams were accomplices, charged accomplices. What I said in my brief on page 14 is that they amount to a little more than uncharged accomplices, uncharged accomplices in that they were certainly suspects, and because they were in a position where they knew they were saving their own skin by giving up the defendant, their credibility is to be questioned. And that's not me saying that they were saving their own skin. That's words out of your own mouth, that Williams was willing to do anything to avoid being charged, and I believe it was Rice that left town for a couple of days to lay low and avoid charges. With regard to the style of the case that I cited in my reply brief, try to just create the sense that Illinois courts are very deferential to the testimony of drug addicts and alcoholics. The common refrain of prosecutors is you take your witnesses as you find them. You don't have angels out there on the street at 4 in the morning, so of course these people are going to be dubious. But style, I believe, describes just how drug addicted and how malignant the witnesses in that case were, and I believe they do question why the defense counsel didn't delve into the weakness of their ability to observe. But as an overall general matter, it would be my contention that the reversal of that case after so many years and so many reviews stands as an example of courts perhaps taking a little closer look when a key witness is a drug addict as to how much you want to rely on their credibility. With that, I'm going to close and again ask that you reverse the convictions on the basis of the ballot or alternatively on the basis of the video statement that was improperly used against the defendant. Thank you.